STEPHANIE M. HINDS (CABN 149604)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CASEY BOOME (NYBN 5101845)
KEVIN RUBINO (CABN 255677)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7291
    FAX: (415) 436-7234
    Casey.Boome@usdoj.gov
    Kevin.Rubino@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 17-CR-00093  WHA |
| Plaintiff, | **UNITED STATES' TRIAL BRIEF ON INTENT TIMING REQUIREMENT** |
| v. | |
| BURTE GUCCI RHODES, aka "Moeshawn," | Trial Date:    June 6. 2022<br>Time:    7:30 a.m. |
| Defendant. | |

TRIAL BRIEF ON INTENT TIMING REQUIREMENT
17-CR-00093  WHA

The Court has directed the parties to provide briefs on the following question:  For a defendant to be guilty of violating 18 U.S.C. § 1958, must the interstate activity occur before the murder?  ECF No. 670.  The answer is no.

## I.     BACKGROUND

In this case, there are two categories of interstate activity engaged in by the defendant Burte Gucci Rhodes that would each satisfy the jurisdictional requirement.  First, in the days leading up to the murder, Rhodes and Mario Robinson, the man who hired Rhodes to commit the murder, communicated numerous times by cellphone, including several calls and texts in the hours before the murder.  Every one of those communications was routed through switches outside California.  Second, in the weeks and months after the murder, Robinson sent Rhodes several thousand dollars by wire transfer as payment for the murder.  The evidence will show that these transfers were sent from Louisiana and received in California.

## II.     ARGUMENT

The government anticipates that the defense will agree that interstate cellphone calls and messages prior to the murder would be sufficient to satisfy the jurisdictional element, provided at least one of those calls or messages were part of the murder-for-hire scheme.[1]  But the interstate wire transfers following the murder are equally sufficient.  That is because the sequence of the murder and interstate activity is irrelevant under § 1958.

### A.     The Statutory Text Does Not Require that the Interstate Activity Precede a Murder.

First, § 1958 criminalizes *agreements* to commit murder-for-hire, not just an accomplished murder-for-hire.  Indeed, § 1958 does not require that a murder ever be committed, as demonstrated by

---

[1] *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997) (cellphones are instrumentalities of interstate commerce); *United States v. Drury*, 396 F.3d 1303, 1313 (11th Cir. 2005) (evidence that defendant's calls to purported in-state hitman's cell phone were routed through out-of-state switching center by cell phone service provider was sufficient to satisfy jurisdictional element of federal statute, regardless of whether defendant knew or intended that phone calls would travel across state lines); *United States v. Weathers*, 169 F.3d 336, 342 (6th Cir. 1999) (despite that both parties to conversation were within Kentucky at the time of the calls, use of cellular phone involved interstate signal sent to communications equipment in both Kentucky and Indiana).

TRIAL BRIEF ON INTENT TIMING REQUIREMENT
17-CR-00093  WHA

1  the fact that it provides for enhanced penalties "if death results."  Because a murder does not ever need

2  to occur for a violation of the statute, the statute clearly does not require the interstate activity to occur

3  before the murder.

4       The source of confusion on this issue arises from an overly narrow reading of the phrase "with

5  intent that a murder be committed."  One might suppose that, if the interstate activity must be done

6  "with intent that a murder be committed," it must occur before the murder.  But the statute does not *just*

7  say that the interstate activity must be done "with intent that a murder be committed."  It says that the

8  interstate activity must be done "with intent that a murder be committed . . . as consideration for the

9  receipt of . . .  anything of pecuniary value."  18 U.S.C. § 1958(a).  Thus, the completed murder-for-hire

10 scheme includes not just a murder, but a payment for the murder.  And it is the completed murder-for-

11 hire scheme that the defendant must "inten[d]" when he engages in the interstate activity.

12      As a result, if the interstate activity happened before the murder-for-hire scheme was complete,

13 including payment, the interstate activity was done with the "intent" that a murder-for-hire occur.  To

14 take the present case as an example, when interstate facilities were used to wire money across state lines

15 to Rhodes, there remained an intent that murder-for-hire be committed.  At that point, only the murder

16 portion of the scheme was complete.  The payment portion was not.

17      The plain text of the statue offers additional support for the government's position through its

18 conspiracy clause.  It provides that a person who "uses or causes another to use . . . a facility of interstate

19 commerce . . . with intent that murder be committed [in exchange for a thing of value] . . . *or conspires*

20 *to do so . . .*" is culpable under the statute.  *Id.* (emphasis added).  Thus, a defendant who "conspired to

21 use" or "conspired to cause another to use" a facility of interstate commerce with intent that murder be

22 committed in exchange for money would be guilty.  *See* 9th Cir. Model Inst. No. 16.7.  This language

23 contemplates a scenario in which a person violates the statute by soliciting a murder and agreeing to

24 send payment to the killer afterward via an interstate money transfer service.  In this scenario, at the time

25 the conspiracy is hatched, the crime is complete.  It is irrelevant whether, as the conspiracy unfolds, the

26

27

28 TRIAL BRIEF ON INTENT TIMING REQUIREMENT
   17-CR-00093  WHA

murder follows the interstate activity or precedes it.  Indeed, as noted above, it is irrelevant whether a murder happens at all.

**B.**     **The Case Law States that the Interstate Activity Does Not Need to Precede a Murder.**

Aside from lacking textual support in the statute, an interpretation of § 1958 requiring that the interstate activity precede the murder is unsupported by case law.  For example, in *United States v. Johnson*, the district court persuasively dismantled the argument that § 1958 requires "that the elements of the offense occur in a specific sequence."  *United States v. Johnson*, 635 F. Supp. 2d 759, 762 (W.D. Tenn. 2009).  In that case, the evidence showed that the defendant paid a hitman $5,000 in advance for the murder of his mother (a transfer that was not made through a facility of interstate commerce) and promised an additional $45,000 following the murder, once he had received his mother's life insurance proceeds.  *Id*. at 763.  Those life insurance proceeds, which were distributed by mail months after the murder, are what allegedly satisfied the jurisdictional element.  *Id*. at 760.  The defendant argued that this was improper because he construed the statute as requiring that "the planned murder for hire must take place *subsequent* to use of the mail or any other interstate facility."  *Id*. at 760–61 (emphasis in original).

The district court rejected this argument as inconsistent with the text of the statute and the relevant case law.  After noting that § 1958 does not even require that a murder be committed at any point, the *Johnson* court explained that "there is nothing in the plain wording of the statute to suggest that the interstate activity must be accomplished prior to the murder or proposed murder."  *Id*. at 760. The court made the further point, also noted above, that "the murder-for-hire scheme was not complete until after the interstate activity occurred" and therefore the interstate activity occurred with "the intent" that a murder-for-hire occur.  *Id*. at 763.  *Johnson* also pointed out that the language of the murder-for-hire statute contrasts with that of the Travel Act, which, unlike § 1958, explicitly requires that the offense occur after the interstate travel.  *Id.* at 764 ("The Travel Act makes the interstate travel an element precedent to a subsequent illegal act by virtue of the word 'thereafter.' By contrast, § 1958

TRIAL BRIEF ON INTENT TIMING REQUIREMENT
17-CR-00093  WHA

1    contains no such structure or wording to indicate that the interstate activity must precede the illegal

2    act."); *see also United States v. Mock*, No. 09- CR-679, 2011 WL 13103436, at *3 (E.D. Mo. Mar. 14,

3    2011).

4            There are numerous other examples of murder-for-hire schemes where the planned use of

5    interstate facilities occurs after the murder itself is committed.  For example, in *United States v. Basile*,

6    the Eighth Circuit affirmed a murder-for-hire conviction that was based in large part on mailings of

7    insurance proceeds that took place after the murder was committed.  *United States v. Basile*, 109 F.3d

8    1304, 1307 (8th Cir. 1997).   The Eight Circuit stated that post-murder insurance mailings "provide the

9    required nexus between the mail or facilities in interstate commerce and the murder for hire," and that

10   the defendant's post-murder "interstate activity concerning the life insurance policy provides an

11   additional interstate connection to the murder plot."  *Id.* at 1312, 1313.

12           Indeed, the "pecuniary gain" sought in a murder-for-hire frequently takes the form of life

13   insurance benefits that necessarily issue after death.  *E.g.*, *United States v. Winters*, 33 F.3d 720, 721

14   (6th Cir. 1994) (the defendant hired a killer to murder her estranged husband after taking out a life

15   insurance policy on the husband's life and agreed to split the proceeds of the life insurance policy with

16   the killer).  This recurrent fact pattern—which often involves the transfer of insurance benefits after the

17   murder is committed—presents one of the paradigmatic evils against which the murder-for-hire statute

18   was addressed.  To adopt an interpretation of § 1958 that requires the interstate facility to precede the

19   murder would remove this situation from the coverage of the statute altogether.

20           It would also lead to illogical and absurd results.  For example, a defendant who mailed payment

21   to the contract killer prior to the murder would be liable under the statute, but a defendant who mailed

22   payment to the hired killer after the murder would not be liable—despite that both are equally culpable

23   and had an equally murderous intent when they sent the money.  *See Johnson*, 2009 WL 1514444, at *4

24   ("[Section 1958] contains no such structure or wording to indicate that the interstate activity must

25   precede the illegal act.  Indeed such a rigid reading would unnecessarily limit the application of the

26   statute.").  It is unlikely that Congress would intend such an absurd result, and the statute should not be

27

28   TRIAL BRIEF ON INTENT TIMING REQUIREMENT
     17-CR-00093  WHA

read to require it.  Indeed, in *United States v. Mock*, the district court canvassed the legislative record on

§ 1958 and concluded:  "Nowhere in the legislative report is there any expression that the murder,

planned or accomplished, must follow in time the use of interstate commerce facilities or of the mail and

the proscribed intent."  *United States v. Mock*, No. 09- CR-679, 2011 WL 13103436, at *3 (E.D. Mo.

Mar. 14, 2011).

All the authorities the government has located support its interpretation of the statute, and there

is no Ninth Circuit case that directly addresses this issue.  The defense's argument to the contrary is

based entirely on a misapplication of dicta from a Ninth Circuit case, *United States v. Diggers*, 559 F.3d

1021 (9th Cir. 2009), that does not address the question posed by the Court.  In *Diggers*, the defendant

hired a hitman to travel from Idaho to California to kill his ex-wife for $10,000.  *Id.* at 1022.  The jury

instructions required the jury to find that the defendant (1) caused the hitman to travel across state lines

and that (2) the defendant intended a murder to be committed, without any need for a connection

between those two elements.  *Id*. at 1023.  As a result, the Ninth Circuit pointed out, it would have been

sufficient for the jury to find that the hitman crossed state lines to "pick up a birthday present for his

niece" and, while he was there, agreed to commit murder for money, which is clearly insufficient.  *Id*.

As the Ninth Circuit explained, under § 1958, "the defendant must have had a murderous intent when he

caused another person to travel across state lines."  *Id*. at 1023.

That uncontroversial holding does not answer the question posed by the Court.  That is because

the evidence will show that Rhodes had an intent to commit murder-for-hire when he received thousands

of dollars from Robinson by interstate wire transfer.  The fact that he received this money after the

murder does not change the analysis.  *Diggers* does not say that the interstate activity must precede the

murder.  It merely says that the defendant must have had the requisite intent to commit murder-for-hire

when he engaged in the interstate activity, which was the case here.

## III.   CONCLUSION

In short, a reading of § 1958 that requires that the interstate activity precede the murder cannot

be squared with the language of the statute, case law, or common sense.  Therefore, a wire transfer from

TRIAL BRIEF ON INTENT TIMING REQUIREMENT
17-CR-00093  WHA

1  Louisiana to California following the murder is a sufficient basis on its own to satisfy the jurisdictional

2  element.

3  DATED:  June 3, 2022                                    Respectfully submitted,

4                                                          STEPHANIE M. HINDS

5                                                          United States Attorney

6

7                                                          _____/s/_____
                                                           CASEY BOOME

8                                                          KEVIN RUBINO
                                                           Assistant United States Attorneys

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  TRIAL BRIEF ON INTENT TIMING REQUIREMENT
    17-CR-00093  WHA