UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BURTE GUCCI RHODES,<br><br>    Defendant. | No. 17-00093 WHA<br><br>**ORDER RESTRICTING "LUCKIEST LIAR" ARGUMENT** |

In closing argument, the prosecution stated that its cooperating witness, when he told his story to law enforcement, did not know and could not have known of the corroboration later obtained and presented at trial. If he was lying to save his own skin, then the cooperating witness was, the prosecutor said, "the luckiest liar in the world," for it just so happened that the government was able to track down records that backed him up in virtually every way.

For example, in his closing argument, the prosecutor stated:

"Remember we talked about the surveillance video at Apt. C matches Marshall's testimony. Surveillance video that he described in every particular before he even knew it existed. The cellphone location data also matches his testimony. Marshall told us his whereabouts on the day he was in California, and the cellphone location data matches perfectly. The flight records match his testimony. He told us about his flight, and there it is." (Gov't Closing at 730).

"He told us about staying in the Oakland Motel 6, and then going to the Casa Loma Hotel in San Francisco the night of the murder. We looked for the records. There they are." (Gov't Closing at 730).

"He told us Jordan Atchison rented a car for him at San Francisco Airport. There are the records. He told us the car was towed, the morning after the murder right

outside of the hotel. We look; there are the records. Just like he said. Again and again, the undisputable evidence matches Mr. Marshall's testimony in ways he could have never anticipated or known." (Gov't Closing at 731).

If Craig Marshall is lying, ladies and gentlemen, then he is the luckiest liar in the world. Can you imagine? He invented a story about a murder for hire, plucked Burte's name out of thin air, and it just so happens that there is a mountain of records that matches his story in every particular in ways he could have never known. Imagine the luck." (Gov't Closing at 731).

It is one thing for the prosecution to present corroborating evidence to the jury and to lean heavily on it in closing. That is proper. It is quite another thing to add the further argument that the cooperating witness had not known and could not have known of the corroboration when he told his story to law enforcement. That is almost always improper and certainly was in the instant case.

*First*, no argument to the jury should ever be made unless it is supported by the evidence heard by the jury at trial. What the cooperating witness knew or could've known about the extent of corroboration is no exception. In our case, for example, there were travel records before the jury, and they corroborated the travel timeline of his story. There was no trial evidence, however, concerning *when* the witness first knew or could have known of those records. The same is true for the cell phone records. By telling the jury that the witness didn't know and could not have known of these records the prosecutor was, in effect, testifying. That was improper. The argument far exceeded the trial record. This alone warranted at the very least a curative instruction.

*Second*, the argument was untrue. On the day after closings, our jury's first full day of deliberations, the defense established (out of the jury's presence) that the government's discovery index revealed the phone and travel records had, indeed, been produced to all defense counsel, including counsel for the cooperating witness, well before he turned state's evidence. His lawyer, it is reasonable to conclude, would have gone over the records with the witness and helped him conform his story to the timeline shown by the records. For example, if the records showed he'd stayed at Motel A on a given night, the lawyer would have corrected any misapprehension by the witness he had been elsewhere. Or, the witness could've

2

1  reviewed the records on his own.  To tell the jury that there was no way he could've known the
2  story told by the records was untrue and improper.
3    The government tried to say that its "luckiest liar" argument was supported by the fact
4  that in his first interview with law enforcement (a week after the murder) the cooperating
5  witness admitted that he had been at the scene of the murder and by the fact that he had done
6  so before the police told him they had security camera footage placing him there.  Even so, he
7  also then said he couldn't identify the killer — the most important point in his narrative — so
8  that first interview hardly supports anything.
9    This was impermissible vouching.  Our court of appeals has held that vouching may
10 occur in two ways: "the prosecution may place the prestige of the government behind the
11 witness or may indicate that information not presented to the jury supports the witness's
12 testimony."  *See United States v. Roberts,* 618 F.2d 530, 533 (9th Cir. 1980).  The second type
13 of vouching "involves prosecutorial remarks that bolster a witness's credibility by reference to
14 matters outside the record." *Ibid.*  Other circuits refer to this concept as "bolstering."  *See*
15 *United States v. Patterson*, 860 F. App'x 865, 868 (4th Cir. 2021) (defining "bolstering" as "an
16 implication by the government that the testimony of a witness is corroborated by evidence
17 known to the government but not known to the jury").
18   In *United States v. Roberts,* our court of appeals held that it was error for the government
19 to suggest in closing argument that a detective was observing its star witness throughout the
20 trial to ensure he did not lie on the stand, for if he was caught lying, there was a "very good
21 likelihood of going to the gas chamber." *Id.* at 533.  The government stated "Detective Sellers
22 is not here on vacation.  He had a mission to serve and that mission was to sit and listen to the
23 testimony of John Harvey Adamson." *Ibid.*  The defense counsel objected on the grounds that
24 there was no evidence of the purpose of the detective's presence during the trial presented to
25 the jury. *Ibid.*  The court held this was error because "in effect, the prosecutor was telling the
26 jury that another witness could have been called to support Adamson's testimony." *Id.* at 534.
27 The error was not dismissed as harmless particularly because the government did not have a
28

United States District Court
Northern District of California

3

strong case — Adamson was its chief witness and the case depended on his credibility. *Id.* at 535.

Similarly, here, Marshall is the government's chief witness, and the government relied on information not in the record to bolster his credibility. There was no trial evidence of the temporal sequence of discovery vis-à-vis Marshall's statements to government presented to the jury during trial.

*Finally*, consider the Rule 403 problem. Typically, a cooperating witness will give a number of interviews and statements leading up to trial. In between, there will be discovery dumps by the government, not to mention investigations by defense counsel. So, if we want to accurately trace the evolution of a witness' recollection and how it may have been influenced by records from security cameras, cell phone companies, airlines, and hotels, then we need to put all of that evidence in chronological order based on when the witness was alerted to it versus when he made the statements, no small task. This means inquiry into what corroboration the cooperating witness learned of and when he learned it, including all that he learned via counsel, for often it will be the lawyer who masters the records and then spoon feeds it to the cooperating witness. To find when the witness learned of items of corroborating evidence, therefore, we must inquire into privileged conversations. The truth may well turn out to be that the witness learned of corroborating evidence <u>before</u> it found its way into his narrative. But how can we invade privileged conferences between the witness and his lawyer? The complications of the "luckiest liar" argument are so aggravating that the argument should be disallowed under Rule 403.

For the foregoing reasons, in the retrial, neither side may argue to the jury that a trial witness had no way to know that his or her testimony would wind up being corroborated by independent evidence (or any variant thereof), at least without the prior permission of the Court upon a showing that the foregoing considerations are not a problem in our particular case. Either side may, of course, still point out to the jury that the witness was corroborated by independent evidence.

4

**IT IS SO ORDERED.**

Dated: June 27, 2022.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE